**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 18-cv-03319-CMA-SKC

STEVE BARDILL,

      Plaintiff,

v.

OWNERS INSURANCE COMPANY,

      Defendant.

---

**ORDER ADOPTING THE RECOMMENDATION OF UNITED STATES MAGISTRATE
JUDGE S. KATO CREWS**

---

      This matter is before the Court on review of the Recommendation by United States Magistrate Judge S. Kato Crews (Doc. # 44), wherein he recommends that this Court deny Defendant Owners Insurance Company's Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. # 23). On September 3, 2019, Defendant filed an Objection to the Recommendation. (Doc. # 45.) Plaintiff Steve Bardill did not respond to the Objection nor did he file any objections to the Recommendation. For the following reasons, Defendant's objections are overruled. The Court affirms and adopts the Recommendation.

## I.    BACKGROUND

**A.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Magistrate Judge Crews provided a thorough recitation of the factual and procedural background in this case. The Recommendation is incorporated herein by reference, *see* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b), and the facts will be repeated only to the extent necessary to address Plaintiff's objections.

On November 30, 2015, Plaintiff was a passenger riding in a work vehicle owned by his employer Meyers Heating and Air ("MHA"). (Doc. # 20 at ¶ 7.) On that day, when the work vehicle was stopped at a red traffic light, an "unknown driver" rear-ended the work vehicle and drove away. (*Id.* at ¶ 8.) Plaintiff reported the accident to the police within 24 hours of the collision. (*Id.* at ¶ 20.) As a result of the accident, Plaintiff alleges to have "suffered bodily injury resulting in permanent physical impairment" (*id.* at ¶ 11), economic damages in the form of "medical, rehabilitation, and other health care expenses" (*id.* at ¶ 12), and noneconomic damages "including, but not limited to past and future pain and suffering, inconvenience, emotional distress, loss of enjoyment of life, and impairment of quality of life" (*id.* at ¶ 13).

Prior to the accident, Defendant issued an insurance policy ("Policy") to Plaintiff's employer MHA providing "automobile coverage for company employees operating and riding as a passenger in company vehicles and/or while working in the course and scope of employment, including [Uninsured Motorist] benefits, as provided in C.R.S. § 10-4-609." (*Id.* at ¶ 15.) The Policy covered the work vehicle involved in the accident. (*Id.* at ¶ 19); (Doc. # 20-1 at 1); (Doc. # 23-1 at 8.) Moreover, the Policy

Section entitled, "Uninsured Motorist Coverage" ("UM Policy") defined "Uninsured automobile" to include a "hit and run automobile," which is one that "causes bodily injury whether or not physical contact is made with the injured person or the automobile the injured person is occupying; and [] whose owner or operator is unknown" as long as the "occurrence involving a hit and run automobile [is] reported to the police within 24 hours of when it takes place." (Doc. # 20 at ¶ 14); (Doc. # 20-4 at 1 (emphasis omitted).)

The UM Policy was in effect from January 1, 2015 to January 1, 2016, and specifically, on the date of the accident. (*Id.* at ¶¶ 15–16.) The UM Policy provided that Defendant would "pay compensatory damages, including, but not limited to loss of consortium, any person is legally entitled to recover from the owner or operator of an **uninsured automobile** because of **bodily injury** sustained by an injured person while **occupying** or using an **automobile** that is covered by **SECTION II – LIABILITY COVERAGE** of the policy." (Doc. # 20-4 at 1 (emphasis in original); (Doc. # 23-2 at 18.) The Policy provided Uninsured Motorist ("UM") coverage up to $1,000,000.00 per person/$1,000,000.00 per occurrence. (*Id.* at ¶ 18.)

Pertinent to the Recommendation, the UM Policy also provided that any person "seeking coverage under the policy must notify [Defendant] promptly as to how, when and where the accident happened. (Doc. # 23-2 at 20); (Doc. # 20-4 at 3 (emphasis in original).) The "Notify Us Promptly" provision ("Notification Provision") continued:

> Failure of any person entitled to Uninsured Motorist Coverage to comply with these provisions shall invalidate the coverage provided by this policy if **we** show by a preponderance of evidence that **we** were prejudiced by the delay.

(Doc. # 23-2 at 20 (emphasis in original)); (Doc. # 20-4 at 3.) The UM Policy also afforded coverage on the condition that the person seeking UM coverage "present a claim for compensatory damages according to the terms and conditions of the policy and conform with any applicable statute of limitations applying to **bodily injury** claims in the state in which the accident occurred." (Doc. # 20-4 at 3); (Doc. # 23-2 at 20) (emphasis in original).

Plaintiff alleges that the UM Policy covered his losses arising from the hit-and-run accident because (1) he "occupied" the covered vehicle with permission from MHA at the time of the accident; (2) the unknown driver who rear-ended the covered vehicle is considered an "uninsured motorist" under the UM Policy; (3) he suffered bodily injury from the accident; (4) he reported the accident to the police within 24 hours; and (5) he made a claim for compensatory damages under the Policy within Colorado's three-year statute of limitations period for UM claims. (Doc. # 20 at ¶¶ 7–37.)

On May 4, 2016, Plaintiff's then-attorney, Bradley Hall, sent Auto-Owners[1] Insurance a letter providing Defendant notice of Plaintiff's "uninsured motorist claim under the [] policy" ("First Letter"). (Doc. # 20 at ¶¶ 23–24); (Doc. # 20-5 at 1.) The First Letter provided the Policy Number, name of the insured, date of the accident, and Plaintiff's name. (Doc. # 20-5 at 1.) Mr. Hall also requested a "complete copy" of Defendant's "claim file and documentation of the policy limits." (*Id.*) Defendant did not respond to the First Letter. (Doc. # 20 at ¶ 25.)

---

[1] The Court recognizes that the proper name of the insurance company should be "Owners Insurance Company" as reflected in the caption. (Doc. # 17.)

On September 21, 2016, Mr. Hall sent Defendant another letter ("Second Letter") advising Defendant that Mr. Hall no longer represented Plaintiff and that Defendant should "direct all future correspondence regarding this case to" Richard Blundell, Plaintiff's new attorney. (Doc. # 20 at ¶ 26); (Doc. # 20-6 at 1.) The Second Letter provided the Policy Number, name of insured, date of the accident, and Plaintiff's name. (*Id.*) Defendant did not respond to the Second Letter. (Doc. # 20 at ¶ 27.)

On September 18, 2018, Plaintiff's then-attorney J. Todd Tenge sent Defendant a letter ("Third Letter") providing Defendant with notice that Mr. Tenge represented Plaintiff "in connection with the injuries, damages, and losses he sustained in an automobile accident on November 30, 2015." (Doc. # 20-7 at 1.) In the Third Letter, Plaintiff's counsel also requested "a copy of all applicable insurance policies, including all resident/relatives, together with any endorsements, addenda or amendments thereto" and "a copy of the property damage claims file, and any and all photographs of the Bardill vehicle as well as transcribed copies of all recorded statements." (*Id.*) The Third Letter provided the Policy Number, the date of loss, and Plaintiff's name. (*Id.*)

On November 14, 2018, Defendant for the first time responded to Plaintiff's letters ("Acknowledgment Letter"). (Doc. # 20 at ¶¶ 29–30.) Defendant acknowledged receipt of the Third Letter, provided a claim number for Plaintiff's UM claim, and declined Plaintiff's request for copies of the Policy and declaration(s) page. (Doc. # 20-8 at 1.) In the Acknowledgment Letter, Defendant requested an "update on [Plaintiff's] condition and treatment[,]" including the "extent of the injuries and the duration of their treatment" in addition to "all medical records, police reports, facts of the incident, and

any additional information" that Plaintiff had "amassed on this case." (*Id.*) The Acknowledgement Letter was sent to Plaintiff sixteen days before the three-year statute of limitations expired. (Doc. # 20 at ¶ 30.)

On November 27, 2018, Plaintiff filed suit in Boulder County District Court and asserted one claim for relief, "Contractual Liability of Defendant Auto-Owners Insurance," and described the hit-and-run accident and cited the basis for which Plaintiff sought coverage under the UM Policy. (Doc. # 1-5 at 1–4.) On December 26, 2018, Defendant removed Plaintiff's action to United States District Court for the District of Colorado. (Doc. # 1.) On January 7, 2019, Plaintiff's counsel sent Defendant another letter ("Demand Letter") requesting that Defendant evaluate Plaintiff's claim for UM benefits and demand for UM benefits. (Doc. # 23-4 at 1–6.) The Demand Letter provided a summary of the accident, Plaintiff's injuries, and damages. (*Id.*)

On January 15, 2019, Plaintiff filed his Amended Complaint and asserted four claims for relief: (1) Claim for UM Benefits/Contractual Liability of Defendant Pursuant to Colo. Rev. Stat. § 10-4-609; (2) Breach of Contract; (3) Bad Faith Breach of Insurance Contract; and (4) Violation of Colo. Rev. Stat. §§ 10-3-1115(1) and 10-3-1116(1). (Doc. # 21 at 6–9).

On February 22, 2019, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. # 23). Defendant argued that Plaintiff failed to state claims for relief because (1) with respect to his contractual claims, the Amended Complaint was devoid of allegations establishing that he complied with the Notification Provision and submitted a claim prior to the expiration of the statute of

6

limitations (Doc. # 23 at 4–8); (2) failure to state contractual claims was fatal to his bad faith claims (*id.* at 8–9); and (3) Plaintiff failed to plead sufficient allegations to support that Defendant owed benefits to Plaintiff in the first place and, as a result, that Defendant unreasonably delayed or denied benefits to Plaintiff (*id.* at 9–10).

On March 22, 2019, Plaintiff filed his Response (Doc. # 36), and therein asserted that his Amended Complaint set forth facts supporting that Plaintiff complied with the Policy's Notification Provision. (*Id.* at 7.) Moreover, Plaintiff stated that he properly pleaded allegations sufficient to support both his common law bad faith and unreasonable delay claims because the Amended Complaint sets forth "multiple ways" that Defendant failed in claims processing, which amounted to "substantial and unreasonable delay in even initiating the process of claim administration." (*Id.* at 12.)

On April 5, 2019, Defendant filed its Reply to Plaintiff's Response (Doc. # 38) and reprised its argument that Plaintiff's notice was deficient as a matter of law, and as such, Defendant was insulated from any liability as to Plaintiff's bad faith or unreasonable delay claims. (*Id.* at 8–10.)

## B.     THE MAGISTRATE JUDGE'S RECOMMENDATION

As discussed in greater detail below, Magistrate Judge Crews issued his Recommendation that the Court deny Defendant's Motion to Dismiss on October 20, 2019. (Doc. # 44.) The Magistrate Judge recommended that the Court deny Defendant's Motion to Dismiss as to Plaintiff's second, third, and fourth claims for relief because Plaintiff adequately pleaded plausible claims for relief pursuant to Rule 12(b)(6). (*Id.* at 8–14.) However, with respect to Plaintiff's first claim, a claim for UM

benefits and contractual liability pursuant to Colo. Rev. Stat. § 10-4-609, the Magistrate Judge recommended that the claim be stricken under Rule 12(f) because the claim was redundant of Plaintiff's second claim for breach of contract.[2] (*Id.* at 5–6.)

On September 3, 2019, Defendant filed an Objection to the Recommendation as to the Magistrate Judge's recommended rulings on Plaintiff's Second, Third, and Fourth Claims for Relief. (Doc. # 45 at 1–2.) Plaintiff did not file a response to Defendant's Objection, nor did he file any objections to the Recommendation. For the following reasons, the Court adopts the Recommendation.

## II.     STANDARD OF REVIEW

### A.     REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

---

[2] Alternatively, Magistrate Judge Crews determined that Plaintiff failed to state a plausible claim for his first claim. (Doc. # 44 at 6–7.) Because Colo. Rev. Stat. § 10-4-604 "imposes 'a one-time duty upon an insurer to notify an insured of the nature and purpose of UM/UIM coverage and to offer the insured the opportunity to purchase such coverage'" (Doc. # 44 at 7 (quoting *All State Ins. Co. v. Parfrey*, 830 P.2d 905, 911–12 (Colo. 1992))), the Magistrate Judge concluded that Plaintiff's allegations that this statute entitled him to recover UM benefits from Defendant failed "to plausibly allege a violation of § 10-4-609(a)(1)." (Doc. # 44 at 7); (Doc. # 20 at ¶ 44.)

When there are no objections filed to a magistrate judge's recommendation, "the district court is accorded considerable discretion with respect to the treatment of unchallenged magistrate reports. In the absence of timely objection, the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

## B.    RULE 12(B)(6)

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion,

bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citation omitted). This pleading standard ensures "that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an adequate defense" and avoids "ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).

### III.        ANALYSIS

**A.      CLAIM ONE: CONTRACTUAL LIABILITY UNDER COLO. REV. STAT. § 10-4-609**

Neither party objected to Magistrate Judge Crews's Recommendation with respect to Plaintiff's First Claim for Relief (Contractual Liability Under Colo. Rev. Stat. § 10-4-609). The Court has reviewed all the relevant pleadings and applicable legal

authority concerning the Recommendation on Plaintiff's first claim. Based on this review, the Court concludes that Magistrate Judge Crews's analysis and recommendation is correct and that "there is no clear error on the face of the record." Fed. R. Civ. P. 72(a). The Court therefore adopts the Recommendation with respect to Plaintiff's first claim. Accordingly, Plaintiff's First Claim for Relief (Doc. # 20 at ¶¶ 38–34) is STRICKEN pursuant to Fed. R. Civ. P. 12(f).

**B.    CLAIM TWO: BREACH OF CONTRACT**

    1.    <u>Applicable Law</u>

Where, as here, federal jurisdiction is predicated upon diversity, the court applies the substantive law of the forum state. *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir.1994). To maintain a breach of contract claim, a plaintiff must establish (1) the existence of a contract; (2) performance by the plaintiff or justification for nonperformance; (3) failure to perform by the defendant; and (4) resulting damage to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

An insurance policy is a contract between the insurer and the insured which determines the claims which the insurer is legally required to pay. Thus, when construing the terms of an insurance policy, Colorado courts apply traditional principles of contract interpretation. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co*., 90 P.3d 814, 819 (Colo. 2004); *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995). The Court recognizes that unlike a negotiated contract, an insurance policy is often imposed on a "take-it-or-leave-it" basis. *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 501–02 (Colo. 2004); *Huizar v. Allstate Ins. Co.*, 952 P.2d 342, 344 (Colo. 1998). Therefore, the

Court assumes a "heightened responsibility" in reviewing insurance policy terms to ensure that they comply with "public policy and principles of fairness." *Thompson*, 84 P.3d at 501–02.

> 2.    Application

Applying Colorado law, the Magistrate Judge determined that Plaintiff's Amended Complaint set forth a plausible claim that met all of the elements of a breach of contract claim. (Doc. # 44 at 8–11.) In Defendant's Objection, Defendant argues that the Magistrate Judge erred in (1) interpreting the Notification Provision and (2) concluding whether Plaintiff met the condition precedent was a question of fact. (*Id.* at 4–9.) Furthermore, Defendant reiterates its argument that neither the Letters nor state lawsuit constituted "prompt notice." (*Id.* at 9–10.) For the following reasons, the Court overrules Defendant's objection as to Plaintiff's breach of contract claim.

> i.    *Whether a Contract Existed*

With respect to the first element, Plaintiff adequately alleged that a contract exists in the form of the UM Policy that covered MHA's automobile and Plaintiff's injuries. First, Plaintiff alleges that the Policy provided that Defendant would "pay compensatory damages, including, but not limited to loss of consortium," to "any person is legally entitled to recover from the owner or operator of an **uninsured automobile** because of **bodily injury** sustained by an injured person while **occupying** or using an **automobile** that is covered by" the Policy. (Doc. # 20-4 at 1 (emphasis in original); (Doc. # 23-2 at 18.) Additionally, Plaintiff alleges that the UM Policy covered his losses arising from the hit-and-run accident because (1) he "occupied" the covered vehicle with

permission from MHA at the time of the accident; (2) the unknown driver who rear-ended the covered vehicle is considered an "uninsured motorist" under the UM Policy; (3) he suffered bodily injury from the accident; (4) he reported the accident to the police within 24 hours; and (5) he made a claim under the Policy within Colorado's three-year statute of limitations period for UM claims as evinced by his Letters. (Doc. # 20 at ¶¶ 7–37.) Accepting these allegations as true, the Court agrees with Magistrate Judge Crews that Plaintiff adequately pleaded that a contract exists.

### ii. Plaintiff's Performance

With respect to the second element, the parties vociferously dispute whether Plaintiff "performed" a condition precedent within the UM Policy—the Notification Provision. However, as a threshold matter, Defendant's contention that Plaintiff failed to comply with the condition precedent is inappropriate for resolution at the Motion to Dismiss stage. Indeed, the Court's "function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs*, 336 F.3d at 1201 (citations and quotation marks omitted). Rule 9(c) provides that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). To that end, the Court agrees with the Magistrate Judge that Plaintiff adequately pleaded that he performed all conditions precedent in the Policy.[3] (Doc # 20 at ¶¶ 23–28, ¶ 46.)

---

[3] Indeed, this Court has previously held that the assertion that a party failed to meet a condition precedent to a contract is an affirmative defense that is not considered in determining whether a party has asserted an affirmative claim for breach of contract. *Christenson v. Citimortgage, Inc.*,

### iii. Defendant's Non-Performance

Regarding the third element, as a result of the Court's determination that the second element is satisfied, the Court agrees that Plaintiff sufficiently pleaded Defendant's non-performance under the UM Policy. Indeed, Plaintiff alleged that upon providing notice of his UM claim to Defendant, Defendant did not perform its contractual obligations by failing to investigate Plaintiff's claim or provide coverage or even a copy of the Policy to Plaintiff—a failure that lasted two-and-a-half years. (Doc. # 20 at ¶¶ 14– 32.) Therefore, Plaintiff has sufficiently pleaded the third element.

### iv. Damages

With respect to the final element of damages, the Court also agrees with Magistrate Judge Crews that Plaintiff adequately pleaded damages. Plaintiff's Amended Complaint provides that, as a result of the accident, Plaintiff alleges to have "suffered bodily injury resulting in permanent physical impairment" (Doc. # 20 at ¶ 11), economic damages in the form of "medical, rehabilitation, and other health care expenses" (*id.* at ¶ 12), and noneconomic damages "including, but not limited to past and future pain and suffering, inconvenience, emotional distress, loss of enjoyment of life, and impairment of

---

Case No. 12-cv-02600-CMA-KLM, 2013 WL 5291947, at *7 (D. Colo. Sept. 18, 2013) (citing 13 Williston on Contracts § 38:5 (4th ed. 2000)). As such, Defendant may raise the affirmative defense that Plaintiff's alleged insufficient notice constituted a failure to meet a condition precedent. However, it is improper for the Court to consider that argument at this time given the Court's task under Rule 12(b)(6)—to review whether the complaint contains sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). The unequivocal language of Rule 9(c) makes it clear that Plaintiff's Amended Complaint contains sufficient factual allegations to support that Plaintiff fulfilled all conditions precedent for asserting a plausible breach of contract claim. Accordingly, the Court declines to consider Defendant's argument as to the sufficiency of Plaintiff's notice at this stage.

quality of life" (*id.* at ¶ 13). Because Plaintiff alleges that these damages arose from the hit-and-run accident and were covered under the UM Policy, Plaintiff has sufficiently alleged that Defendant's failure to pay the UM benefits to Plaintiff has caused Plaintiff to incur those damages. (*Id.* at ¶ 12, 33.)

Accordingly, the Court finds that Plaintiff alleges a plausible breach of contract claim.

## C.     CLAIM THREE: BAD FAITH BREACH OF INSURANCE CONTRACT

Under Colorado law, every insurance contract contains an implied covenant of good faith and fair dealing. *Brennan v. Farmers All. Mut. Ins. Co.*, 961 P.2d 550, 556 (Colo. App. 1998); *see also* Colo. Rev. Stat. § 10-1-101 (requiring that persons providing insurance services to the public must "be at all times actuated by good faith"). To establish Plaintiff's bad faith breach of insurance contract, he must allege "(1) the insurer acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010) (citing *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 415 (Colo. 2004)). The reasonableness of the insurer's conduct must be determined objectively. *Id.*

With respect to Plaintiff's third claim, the Magistrate Judge determined that Plaintiff's Amended Complaint "plausibly alleges a bad faith claim" because the crux of Plaintiff's argument hinged on whether a breach of contract existed. (Doc. # 44 at 12.) Because Plaintiff alleged a plausible breach of contract claim, so too did the Magistrate Judge conclude that Plaintiff's claim for bad faith breach of insurance contract survived

Rule 12(b)(6) scrutiny. (*Id.*) In Defendant's Objection, it contends that the Magistrate Judge failed to address Plaintiff's second argument—that "Plaintiff never submitted any information regarding a claim to Defendant that could have possibly been investigated or paid prior to" the filing of the lawsuit. (Doc. # 45 at 11.)

The Court agrees with the Magistrate Judge that, because Plaintiff adequately pleaded his breach of contract claim, Plaintiff's bad faith claim does not fail as a matter of law. (Doc. # 44 at 12.) Moreover, the Court rejects Defendant's second argument that Plaintiff "never submitted any information regarding a claim to Defendant that could have possibly been investigated or paid prior to filing this lawsuit" or triggered Defendant's "duty to act." (Doc. # 45 at 11.) As previously discussed, the Court finds that Plaintiff sufficiently pleaded that he met all conditions precedent, including providing notice of his UM claim to Defendant.

Additionally, Plaintiff alleges that Defendant failed to open or investigate Plaintiff's UM claim or respond for over two years to Plaintiff's First Letter, in which Plaintiff requested a copy of the Policy and provided Defendant with notice of his UM claim, the Policy Number, date of accident, name of the insured, and reference of an accident. (Doc. ## 20 at ¶¶ 23–24, 20-5 at 1.) Yet, Defendant responded to Plaintiff's Third Letter, which contained substantively similar information as was set forth in his First Letter. (Doc. ## 20 at ¶¶ 29–31, 20-7 at 1, 20-8 at 1.) Although Defendant vehemently contends that neither the First nor the Third Letter constituted adequate notice, Defendant chose to respond to the Third Letter—a mere sixteen days before the three-year statute of limitations expired. (Doc. # 20 at 29–30.) Drawing all reasonable

inferences from these factual allegations in favor of Plaintiff, the Court is satisfied that Plaintiff has sufficiently alleged facts supporting that Defendant acted unreasonably under the circumstances and recklessly disregarded the validity of Plaintiff's UM claim. Accordingly, the Court finds that Plaintiff has sufficiently alleged his bad faith breach of insurance contract claim.

## D. CLAIM FOUR: STATUTORY UNREASONABLE DELAY CLAIM

Plaintiff's final claim for relief is for violations of Colo. Rev. Stat. §§ 10-3-1115(1) and 1116(1). As the Magistrate Judge correctly observed, under Colo. Rev. Stat. § 10-3-1115(1)(a), an insurer "shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1116(1) provides that a "first-party claimant . . . whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit." For purposes of both statues, first-party claimant is defined as "an individual . . . asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy." Colo. Rev. Stat. § 10-3-1115(1)(b).

Magistrate Judge Crews concluded that Plaintiff sufficiently alleged that he was owed UM benefits under the UM Policy, and, as a result of Defendant's delay in responding to Plaintiff for over two years, Plaintiff stated a plausible claim for violation of Colo. Rev. Stat. §§ 10-3-1115(1) and 1116(1). (Doc. # 44 at 12–14.) Defendant again asserts that the Magistrate Judge's Recommendation is erroneous based on its argument that Plaintiff provided insufficient notice under the Policy. (Doc. # 45 at 12.)

For the reasons previously discussed, the Court finds that it is improper to consider whether Plaintiff provided sufficient notice. The question is whether Plaintiff's Amended Complaint sets forth facts alleging that he met all conditions precedent, including compliance with the Notice Provision. He did. As such, accepting as true Plaintiff's allegations that Defendant delayed for over two years in investigating and denying his claim for UM Benefits (Doc. # 20 at ¶¶ 23–33), the Court too finds that the Amended Complaint sets forth a plausible claim for violations of Colo. Rev. Stat. §§ 10-3-1115(1) and 1116(1).

## IV.     CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Defendant's Objections (Doc. # 45) are OVERRULED;

2. Magistrate Judge Crews's Recommendation (Doc. # 44) is AFFIRMED AND ADOPTED as an Order of this Court;

3. Plaintiff's First Claim for Relief set forth in his Amended Complaint (Doc. # 20) is STRICKEN pursuant to Federal Rule of Civil Procedure 12(f); and

4. The remainder of Defendant's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. # 23) is DENIED.

DATED:  September 30, 2019

BY THE COURT:

_Christine M Arguello_____
CHRISTINE M. ARGUELLO
United States District Judge