**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 18-cv-03319-CMA-SKC

STEVE BARDILL,

      Plaintiff,

v.

OWNERS INSURANCE COMPANY,

      Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

      This matter is before the Court on Defendant Owner's Insurance Company's Motion for Summary Judgment, wherein Defendant asserts that it is entitled to summary judgment on all of Plaintiff's claims because Plaintiff has failed to put forth competent evidence to support a finding that Defendant breached its insurance contract with Plaintiff, unreasonably delayed or denied any benefits owed to Plaintiff, or acted in bad faith, and that Plaintiff is not entitled to insurance benefits as a matter of law. *See generally* (Doc. # 58). For the reasons that follow, the Court grants Defendant's Motion.

## I.    <u>BACKGROUND</u>

      On November 30, 2015, Plaintiff was a passenger riding in a work vehicle owned by his employer, Meyers Heating and Air. (Doc. # 63 at 2); (Doc. # 66 at 3). On that day, an unknown driver rear-ended the work vehicle and drove away. Plaintiff reported the accident to the police within 24 hours of the collision. (*Id.*) As a result of the accident,

Plaintiff alleges that he has "suffered bodily injury resulting in permanent physical impairment," economic damages in the form of "medical, rehabilitation, and other health care expenses," and noneconomic damages "including, but not limited to past and future pain and suffering, inconvenience, emotional distress, loss of enjoyment of life, and impairment of quality of life." (Doc. # 20 at 11–13.)

Prior to the accident, Defendant issued an insurance policy to Meyers Heating and Air ("Policy") that provided automobile coverage for employees operating and riding as a passenger in company vehicles and/or while working in the course and scope of employment, including uninsured motorist ("UM") benefits, as provided in Colo. Rev. Stat. § 10-4-609. (Doc. # 63 at 2); (Doc. # 66 at 3); (Doc. # 58-1 at 27–34).The Policy was in effect on the date of Plaintiff's accident and covered the work vehicle involved. (Doc. # 20-1 at 1); (Doc. # 23-1 at 8); (Doc. # 66 at 3). Moreover, the Policy defines uninsured automobile to include "a hit and run automobile," which is an automobile that "causes bodily injury whether or not physical contact is made with the injured person or the automobile the injured person is occupying" and "whose owner or operator is unknown" as long as the "occurrence involving a hit and run automobile [is] reported to the police within 24 hours of when it takes place." (Doc. # 58-1 at 32.)

The Policy provides that Defendant would "pay compensatory damages, including, but not limited to loss of consortium, any person is legally entitled to recover from the owner or operator of an uninsured automobile because of bodily injury sustained by an injured person while occupying or using an automobile that is covered by SECTION II – LIABILITY COVERAGE of the policy." (Doc. # 20-4 at 1) (emphasis

omitted); (Doc. # 23-2 at 18). The Policy provides UM coverage of up to $1 million per person or per occurrence. (*Id.* at 18.)

Under the Policy, any person seeking coverage must comply with several conditions. First, any person pursuing UM benefits "must notify [Defendant] promptly as to how, when and where the accident happened" and must provide the names and addresses of any injured person and any witnesses. (Doc. # 58-1 at 34.) The "Notify Us Promptly" provision ("Notice Provision") continues: "Failure of any person entitled to Uninsured Motorist Coverage to comply with these provisions shall invalidate the coverage provided by this policy if we show by a preponderance of evidence that we were prejudiced by the delay." (*Id.*) (emphasis omitted). Next, the "Time Limitation for Actions Against Us" provision ("Time Limitation Provision") requires that any person pursuing benefits "must present a claim for compensatory damages according to the terms and conditions of the policy and conform with any applicable statute of limitations applying to bodily injury claims in the state in which the accident occurred." (*Id.*) (emphasis omitted). Further, the "Assist and Cooperate" provision requires any person seeking benefits to "cooperate with [Defendant] in the investigation, settlement or defense of any claim or suit," including by "giving [Defendant] access to any documents which [it] request[s]." (*Id.* at 28.) The Policy provides that "[n]o legal action may be brought against [Defendant] until there has been compliance with all the terms of this policy" ("Legal Action Provision"). (*Id.* at 31.)

Plaintiff alleges that the Policy covered his losses arising from the hit-and-run accident because (1) he "occupied" the covered vehicle with permission from Meyers

Heating and Air at the time of the accident; (2) the unknown driver who rear-ended the covered vehicle is considered an "uninsured motorist" under the Policy; (3) he suffered bodily injury from the accident; (4) he reported the accident to the police within 24 hours; and (5) he made a claim for compensatory damages under the Policy within Colorado's three-year statute of limitations period for UM claims. (Doc. # 20 at 7–37.)

Plaintiff asserts, and Defendant disputes, that he gave Defendant written notice of his claim beginning in 2016. Plaintiff represents that on May 4, 2016, Plaintiff's then-attorney Bradley Hall sent Defendant a letter providing notice of Plaintiff's "uninsured motorist claim under the policy" ("First Letter"). (Doc. # 20 at 23–24); (Doc. # 20-5 at 1). The First Letter provided the Policy Number, name of the insured, date of the accident, and Plaintiff's name. (Doc. # 20-5 at 1.) Defendant did not respond to the First Letter (Doc. # 20 at 25), and it represents that the First Letter was never received. (Doc. # 66 at 4); (Doc. # 66-1 at 3–4).

Plaintiff further asserts that on September 21, 2016, Attorney Hall sent Defendant another letter ("Second Letter") advising Defendant that Mr. Hall no longer represented Plaintiff and that Defendant should "direct all future correspondence regarding this case to" Plaintiff's new attorney. (Doc. # 20 at 26); (Doc. # 20-6 at 1). The Second Letter provided the Policy Number, name of insured, date of the accident, and Plaintiff's name. (*Id.*) Defendant did not respond to the Second Letter (Doc. # 20 at 27), and it represents that the Second Letter was never received. (Doc. # 66 at 5); (Doc. # 366-1 at 3).

Plaintiff further asserts that on September 18, 2018, Plaintiff's then-attorney J. Todd Tenge sent Defendant a letter ("Third Letter") notifying Defendant that Attorney

Tenge represented Plaintiff "in connection with the injuries, damages, and losses he sustained in an automobile accident on November 30, 2015." (Doc. # 20-7 at 1.) In the Third Letter, Plaintiff's counsel also requested "a copy of all applicable insurance policies, including all resident/relatives, together with any endorsements, addenda or amendments thereto" and "a copy of the property damage claims file, and any and all photographs of the Bardill vehicle as well as transcribed copies of all recorded statements." (*Id.*) The Third Letter provided the Policy Number, the date of loss, and Plaintiff's name. (*Id.*) Defendant disputes that it received the Third Letter. (Doc. # 66 at 5); (Doc. # 66-1 at 8).

On November 14, 2018, Defendant sent a letter of acknowledgment to Plaintiff ("Acknowledgment Letter"). (Doc. # 20 at 29–30.) Defendant acknowledged receipt of correspondence from Attorney Tenge dated October 1, 2018, provided a claim number for Plaintiff's UM claim, and declined Plaintiff's request for a copy of the Policy. (Doc. # 20-8 at 1.) In the Acknowledgment Letter, Defendant requested an "update on [Plaintiff's] condition and treatment[,]" including the "extent of the injuries and the duration of their treatment," as well as "all medical records, police reports, facts of the incident, and any additional information" that Plaintiff had "amassed on this case." (*Id.*) The Acknowledgement Letter was sent sixteen days before the three-year statute of limitations expired. (Doc. # 20 at 30.)

On November 27, 2018, two days before the statute of limitations expired, Plaintiff filed suit in Boulder County District Court and asserted one claim for relief— "Contractual Liability of Defendant Auto-Owners Insurance." (Doc. # 1-5 at 1–4.) On

December 26, 2018, Defendant removed Plaintiff's action to this Court. (Doc. # 1.) On January 7, 2019, Plaintiff's counsel sent Defendant another letter ("Demand Letter") requesting that Defendant evaluate Plaintiff's claim and demand for UM benefits. (Doc. # 23-4 at 1–6.) The Demand Letter provided a summary of the accident, Plaintiff's injuries, and Plaintiff's damages. It also included Plaintiff's medical records and bills, which had not previously been sent to Defendant. (*Id.*)

On January 15, 2019, Plaintiff filed his Amended Complaint and asserted four claims for relief: (1) claim for UM benefits/contractual liability of Defendant pursuant to Colo. Rev. Stat. § 10-4-609; (2) breach of contract; (3) bad faith breach of insurance contract; and (4) violation of Colo. Rev. Stat. §§ 10-3-1115(1) and 10-3-1116(1). (Doc. # 20 at 6–9.) On February 22, 2019, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. # 23.) The Court granted Defendant's Motion to Dismiss only as to Plaintiff's First Claim for Relief, which was stricken pursuant to Fed. R. Civ. P. 12(f). (Doc. # 47 at 18.)

On December 23, 2019, Defendant filed the instant Motion for Summary Judgment, wherein Defendant moves the Court to grant summary judgment on all of Plaintiff's remaining claims—i.e., (1) breach of contract; (2) common law bad faith breach of insurance contract; and (4) violation of Colo. Rev. Stat. §§ 10-3-1115(1) and 10-3-1116(1) (statutory bad faith breach of insurance contract). (Doc. # 58.) Plaintiff responded in opposition on January 13, 2020 (Doc. # 63), to which Defendant replied on January 27, 2020 (Doc. # 66).

## II.   <u>LEGAL STANDARDS</u>

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may

7

not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III.   ANALYSIS

Defendant moves for summary judgment on the basis that the only admissible evidence before the Court establishes that Plaintiff provided unreasonably late notice of his UM claim to Defendant and Plaintiff is not entitled to benefits under the Policy as a result of his breaches of contract. Plaintiff argues that he complied with the Policy's Notice Provision and that Defendant's delay in acting on this notice and its failure to reconcile competing medical opinions or settle Plaintiff's claims constitute bad faith breaches of the insurance contract. (Doc. # 36 at 7, 12.) The Court finds that Plaintiff has failed to raise any genuine issues of material fact for trial and Defendant is entitled to summary judgment on all claims.

### A.     BREACH OF CONTRACT

Under Colorado law, the elements of a breach of contract claim are as follows: (1) the existence of a contract; (2) the plaintiff's performance of its contractual obligations or its justification(s) for non-performance; (3) the defendant's failure to perform; and (4) the plaintiff's damages. *MacKinney v. Allstate Fire & Cas. Ins. Co.*, No.

16-CV-01447-NYW, 2016 WL 7034977, at *4 (D. Colo. Dec. 1, 2016). An insurance policy is a contract, which should be interpreted consistently with the well-settled principles of contractual interpretation. *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990).

Plaintiff's breach of contract claim is premised on the theory that Plaintiff provided prompt notice of his UM claim to Defendant through his First, Second, and Third Letters and Defendant failed to perform under the Policy when it did not open a claim, investigate, provide Plaintiff benefits, or otherwise act on the notice. Defendant points to a lack of evidence to substantiate Plaintiff's assumptions that the First, Second, and Third Letters were actually mailed to Defendant and asserts that Plaintiff's breaches of contract rendered him not entitled to benefits under the Policy. The Court addresses Plaintiff's notice to Defendant before turning to how Plaintiff's failure to comply with the terms of the Policy entitle Defendant to summary judgment on his breach of contract claim.

1. No Rational Trier of Fact Could Find that Plaintiff Provided Prompt Notice Under the Policy

Under the common law mailbox rule, evidence that an item was properly addressed and placed in the mail creates a rebuttable presumption that the item was received. *Telerico v. Nationwide Mut. Fire Ins. Co.*, 529 F. App'x 729, 732 (6th Cir. 2013); *see also Sorrentino v. United States*, 171 F. Supp. 2d 1150, 1153 (D. Colo. 2001) (quoting *Crude Oil Corp. of Am. v. Commissioner,* 161 F.2d 809, 810 (10th Cir. 1947)) ("Proof of due mailing is prima facie evidence of receipt."). This rule "creates a rebuttable presumption of receipt only when the sender presents evidence that their

letter was properly addressed and actually mailed." *Telerico*, 529 F. App'x at 732. Evidence of actual mailing includes an affidavit from the employee who mailed the item or "proof of procedures followed in the regular course of operations which give rise to a strong inference that the [item] was properly addressed and mailed." *Sorrentino*, 171 F. Supp. 2d at 1153.

In the instant case, Plaintiff relies on copies of the First and Second Letter purportedly sent by his previous attorneys on May 4, 2016, and September 21, 2016, respectively, to establish that he provided prompt notice of his UM claim to Defendant. (Doc. # 20-5 at 1); (Doc # 20-6 at 1). However, Plaintiff has provided no evidence of actual mailing, such as testimony or an affidavit by individuals who mailed the letters or could attest to mailing procedures followed in the regular course of business operations by previous counsel's law firms. *Sorrentino*, 171 F. Supp. 2d at 1153. Further, Plaintiff testified that he does not know which letters, if any, were sent to Defendant. (Doc. # 66-1 at 86.) Therefore, Plaintiff is not entitled to a presumption that the letters were received under the common law mailbox rule. *Telerico*, 529 F. App'x at 732. Plaintiff's speculation that the letters were mailed on the dates printed on the letters does not constitute competent summary judgment evidence. *Bones*, 366 F.3d at 875.

Further, the Third Letter does not create a genuine issue for trial.[1] Harrison Weber, Defendant's adjustor assigned to Plaintiff's claim, testified that Defendant first

---

[1] The Court assumes without deciding that the fax confirmation attached to the Third Letter is sufficient proof of due mailing to establish prima facie evidence of receipt under the mailbox rule. (Doc. # 20-7 at 2); *Sorrentino*, 171 F. Supp. 2d at 1153 ("Proof of due mailing is prima facie evidence of receipt.") (quoting *Crude Oil Corp. of Am. v. Commissioner,* 161 F.2d 809, 810 (10th Cir. 1947)).

received notice of Plaintiff's claim on November 5, 2018, via a letter of representation from the Tenge Law Firm dated October 1, 2018. (Doc. # 58-1 at 8.) Assuming that Defendant actually received notice via the Third Letter on September 18, 2018, and not on November 5, 2018, the Court finds that this difference is immaterial. Plaintiff provided notice of his November 2015 car accident in September 2018 at the earliest; no rational trier of fact could find that this three-year delay constituted prompt notice.

2.   <u>Plaintiff Is Not Entitled to Benefits as a Matter of Law Due to his Failure to Comply with the Terms of the Policy</u>

Defendant is entitled to summary judgment on Plaintiff's breach of contract claim because Plaintiff has not created any genuine issues of material fact to support that insurance benefits were in fact owed under the Policy. The Policy provides that failure of any person entitled to benefits to comply with the Policy's provisions shall invalidate coverage if Defendant shows by a preponderance of the evidence that it was prejudiced as a result. (Doc. # 58-1 at 34.) Such is the case here. Plaintiff breached the Policy in multiple ways:

- Plaintiff failed to comply with the Notice Provision, which requires the insured to provide prompt notice of a claim, by waiting almost three years to send notice of his claim to Defendant, (*Id.*);

- Plaintiff failed to comply with the Assist and Cooperate Provision, which requires the insured to give the insurer access to all documents it requests, by refusing to provide certain documents Defendant requested, (*Id.* at 29, 39);

- Plaintiff failed to comply with the Time Limitation Provision by failing to present a claim for compensatory damages according to the terms and conditions of the

Policy within the applicable statute of limitations, (*Id.* at 34); (Doc. # 63 at 4);

(Doc. # 63-1 at 180); and

- Plaintiff failed to comply with the Legal Action Provision, which requires the insured to comply with the terms of the Policy before resorting to legal action, by initiating the instant lawsuit after giving Defendant unreasonably late notice and before providing Defendant substantive information with which it could investigate Plaintiff's claim, (Doc. # 58-1 at 31).[2]

Defendant has been prejudiced by Plaintiff's failure to comply with the terms of the Policy. Defendant was unable to investigate the accident or Plaintiff's claimed injuries for three years, it had to defend against this lawsuit a month after first receiving notice of Plaintiff's claim, and it did not receive any substantive information concerning Plaintiff's claim until more than a month after the lawsuit was filed. Under these circumstances, and pursuant to the terms of the Policy and Colorado precedent,[3] Plaintiff is not entitled to benefits as a matter of law.

---

[2] *Compare* (Doc. # 1-3) (complaint filed November 27, 2018) *with* (Doc. # 63-1 at 180) (medical records, medical bills, and other substantive information first sent to Defendant on January 7, 2019).

[3] Colorado courts have adopted the notice-prejudice rule that permits an insurer to deny benefits only where its ability to investigate or defend the insured's claim was compromised by the insured's failure to provide timely notice. *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 229 (Colo. 2001). Therefore, there is a two-step approach to late-notice cases. Once it has been established that an insured has unreasonably provided delayed notice to an insurer, an insurer may only deny benefits if it can prove by a preponderance of the evidence that it was prejudiced by the delay. *Id.*

**B.     BAD FAITH BREACH OF INSURANCE CONTRACT CLAIMS**

1.     Common Law Claim

As to Plaintiff's common law bad faith claim, "[w]hen an insured sues his or her insurer for bad faith breach of an insurance contract, the insured must prove that (1) the insurer acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1114 (D. Colo. 2012). "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 759–60, *as modified on denial of reh'g* (Mar. 15, 2012). An insurer will be found to have acted in bad faith only if it has intentionally denied, failed to process, or failed to pay a claim without a reasonable basis. *Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1275 (Colo. 1985).

Because the Court has concluded that Defendant did not breach its contract with Plaintiff and, as such, Plaintiff is not entitled to benefits under the Policy, Plaintiff cannot succeed on a common law bad faith claim as a matter of law. *See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) (noting that it is settled law in Colorado that a bad faith claim must fail if coverage was properly denied). Given the circumstances before the Court, Defendant acted reasonably by not paying benefits to Plaintiff that were not due under the Policy. *See Peterson v. USAA Life Ins. Co.*, 353 F. Supp. 3d 1099, 1112 (D. Colo. 2018) (granting summary judgment

in favor of defendant on bad faith claim where denial of coverage was proper as a matter of law), *aff'd,* No. 18-1447, 2020 WL 2609831 (10th Cir. May 22, 2020). As such, Defendant is entitled to summary judgment on Plaintiff's common law bad faith claim.

2. Statutory Claim

Likewise, Defendant is entitled to summary judgment on Plaintiff's statutory bad faith claim pursuant to Colo. Rev. Stat. §§ 10–3–1115(1)(a) and–1116(1). In order to prevail on Colorado's statutory claim for unreasonable delay or denial of benefits, a plaintiff must establish that (1) insurance benefits were owed, and (2) the defendant delayed or denied payment of those benefits without a reasonable basis. *See* Colo. Rev. Stat. §§ 10–3–1115(1)(a) ("A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for **benefits owed** to or on behalf of any first-party claimant.") (emphasis added).[4] Again, because the Court has determined that Plaintiff is not entitled to benefits under the Policy as a matter of law, there is no genuine dispute of material fact as to whether Defendant violated Colo. Rev. Stat. §§ 10-3-1115(1)(a) and –1116(1). Defendant is entitled to summary judgment on Plaintiff's statutory bad faith claim as well.

## IV.   **CONCLUSION**

For the foregoing reasons, it is ORDERED that Defendant's Motion for Summary Judgment (Doc. # 58) is hereby GRANTED. Summary judgment shall enter in favor of

---

[4] Whereas the common law bad faith claim requires a plaintiff to establish that the insurer knew or recklessly disregarded the fact that its conduct was unreasonable, the statutory claim requires only that the claim for benefits be denied without a reasonable basis. *Vaccaro v. Am. Family Ins. Grp.*, 2012 COA 9M, ¶ 21, 275 P.3d 750, 756, *as modified on denial of reh'g* (Mar. 15, 2012).

Defendant and against Plaintiff on all claims. It is

FURTHER ORDERED that all settings in this case, including the Final Trial

Preparation Conference and the Jury Trial, are hereby VACATED. The Clerk of Court is

respectfully directed to close this case.

DATED: August 6, 2020

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge